# In the United States Court of Federal Claims

No. 19-674
Filed: April 1, 2020
Reissued: April 21, 2020[1]

|  |  |
|---|---|
| HARMONIA HOLDINGS GROUP, LLC, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) ) |
| Defendant, | ) ) |
| and | ) ) |
| DEV TECHNOLOGY GROUP, INC., | ) ) ) |
| Defendant-Intervenor. | ) ) ) |

*Walter Brad English*, Maynard, Cooper & Gale PC, Huntsville, AL, for plaintiff.

*David M. Kerr*, U.S. Department of Justice, Civil Division, Washington, DC, for defendant.

*William A. Shook*, Law Offices of William A. Shook, PLLC, Washington, DC, for defendant-intervenor.

## ORDER DENYING INJUNCTION PENDING APPEAL

*SMITH*, **Senior Judge**

Before the Court is plaintiff's Motion for Injunction Pending Appeal pursuant to Rule 62(d) of the Rules of the Court of Federal Claims ("RCFC"). Plaintiff, Harmonia Holdings Group, LLC ("Harmonia"), requests that the Court enjoin performance of the contract awarded by the United States Customs and Border Protection ("CBP" or "Agency") to defendant-intervenor, Dev Technology Group, Inc. ("Dev Tech"), pending the resolution of plaintiff's appeal of the Court's January 17, 2020 Opinion and Order.[2] *See generally* Plaintiff's

---

[1]     An unredacted version of this Order was issued under seal on April 1, 2020. The parties were given an opportunity to propose redactions, but no such proposals were made.
[2]     The Court unsealed and issued a public version of its January 17, 2020 Opinion and Order on February 3, 2020.

Motion for Injunction Pending Appeal (hereinafter "Pl.'s Mot."). Plaintiff focuses its request for injunctive relief on the Court's allegedly improper denial of plaintiff's pre-award protest grounds only. *See generally id.* In response, defendant and defendant-intervenor contend that the Court should deny plaintiff's Motion, as plaintiff fails to demonstrate a likelihood of success on the merits or that the balance of hardships weigh in plaintiff's favor. Defendant's Opposition to Motion for Injunction Pending Appeal (hereinafter "Def.'s Resp.") at 2; Defendant-Intervenor Dev Technology Group, Inc.'s Opposition to Plaintiff's Motion for Injunction Pending Appeal (hereinafter "Def.-Int.'s Resp.") at 1. For the reasons set forth below, plaintiff's Motion for Injunction Pending Appeal is denied.

## I.     Background

On July 12, 2018, CBP issued Solicitation No. HSBP1018CSPD, Request for Quote 1317188 (hereinafter "Solicitation" or "RFQ"), requesting quotes for development and operations and maintenance support services for its Cargo Systems Program Directorate ("CSPD") to develop and support cargo systems applications. Opinion and Order at 2. The CSPD "is responsible for managing the Automated Commercial Environment (ACE), which is a commercial trade processing system" that "helps reduce the Nation's vulnerability to changing threats without diminishing economic security, by providing threat awareness, prevention, and protection for the homeland." *Id.* (quoting Administrative Record 2981). Prior to making an award decision, but after receiving proposals, the Agency issued two additional amendments to the Solicitation—Amendment 9, which the Agency issued on October 26, 2018, and Amendment 10, which the Agency issued on November 1, 2018. *Id.* at 4, 6. Due to the changes allegedly caused by those Amendments, plaintiff filed a formal agency-level protest on November 12, 2018, arguing that offerors should be allowed to modify their proposals beyond the scope of what the Agency permitted in response to Amendments 9 and 10. *Id.* at 8. The Agency timely denied plaintiff's protest on December 6, 2018 and issued its award decision on April 23, 2019. *Id.* at 8–9.

On May 7, 2019, five months after the Agency denied its protest, Harmonia filed a pre- and post-award bid protest with this Court, renewing the arguments raised in its agency-level protest and challenging the Agency's award to defendant-intervenor. *Id.* at 1–2, 9, 13–14. On January 17, 2020, the Court issued its Opinion and Order denying plaintiff's Motion for Judgment on the Administrative Record, including plaintiff's request for permanent injunctive relief. *See generally* Opinion and Order; *see also* Plaintiff's Harmonia Holding Group, LLC's Motion for Judgment on the Administrative Record and Brief in Support Thereof at 24–27 (requesting that the Court "[p]ermanently enjoin[] the Agency from proceeding with performance under [the] awarded contract"). On February 24, 2020, plaintiff separately filed its Notice of Appeal and its Motion for Injunction Pending Appeal. *See generally* Notice of Appeal; Pl.'s Mot. On March 6, 2020, defendant filed its Response to plaintiff's Motion. *See generally* Def.'s Resp. Defendant-intervenor filed its Response on March 9, 2020. *See generally* Def.-Int.'s Resp. Pursuant to the Court's March 12, 2020 Order, on March 16, 2020, plaintiff filed its consolidated Reply to defendant and defendant-intervenor's respective Responses. *See generally* Plaintiff's Reply in Support of Motion for Injunction Pending Appeal (hereinafter "Pl.'s Reply"). Plaintiff's Motion is fully briefed and ripe for review.

## II.        Discussion

Prior to this Court's amendment to RCFC 62 on July 1, 2019, RCFC 62(c) governed injunctions pending appeal.[3]  As a result of that amendment, RCFC 62(d) now governs injunctions pending appeal and states that, "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."  Such an injunction is, however, "'an extraordinary and drastic remedy,' which accordingly 'will not be lightly granted.'"  *Telos Corp. v. United States*, 129 Fed. Cl. 573, 575 (2016) (citations omitted) (quoting *Akima Intra-Data, LLC v. United States*, 120 Fed. Cl. 25, 27 (2015); and then quoting *RLB Contracting, Inc. v. United States*, 120 Fed. Cl. 681, 682 (2015)) ("[T]he Court is not aware of a single instance in which an RCFC 62(c) injunction has been issued.").

As an injunction pending an appeal is an extraordinary and drastic remedy, the burden of persuasion rests with the moving party.  *See Akima*, 120 Fed. Cl. at 27 (quoting *OAO Corp. v. United States*, 49 Fed. Cl. 478, 480 (2001)).  To determine whether that burden has been met, the Court considers the following four factors: "(1) whether the movant has made a strong showing that it is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent an injunction; (3) whether issuance of the injunction will substantially injure the other interested parties; and (4) where the public interest lies."  *Id.* at 27–28 (citing *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990)).  This Court has previously recognized "a flexible application of these factors" and held that no single factor is determinative.  *Telos*, 129 Fed. Cl. at 575; *RLB Contracting, Inc. v. United States*, 120 Fed. Cl. 681, 682 (2015).  If the movant fails to show a likelihood of success on appeal, however, the remaining factors "must tilt 'decidedly toward [the movant]'" for the movant to prevail.  *RLB Contracting*, 120 Fed. Cl. at 682 (quoting *Standard Havens*, 897 F.2d at 513).

In both its Motion and Reply, plaintiff's request for injunctive relief focuses almost entirely on its contention that it "has a strong likelihood of success on the merits" given the Court's alleged misapplication of the law when denying plaintiff's pre-award protest.  *See generally* Pl.'s Mot.; Pl.'s Reply.  In its Motion, plaintiff alleges that it has a "strong likelihood of success on the merits" because "the Court improperly grafted a 'diligent pursuit' requirement onto *Blue & Gold*'s waiver rule."  Pl.'s Mot. at 4 (citing *Blue & Gold Fleet L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007)).  Specifically, plaintiff contends that the Court "misapplied the Federal Circuit's precedent related to Tucker Act standing as a prospective offeror to an actual offeror."  *Id.*

Defendant argues that plaintiff has failed to demonstrate a likelihood of success on the merits, and that, in its Motion, "Harmonia makes the same argument that this Court considered and rejected."  Def.'s Resp. at 3.  Moreover, defendant claims that Harmonia "does not directly contest the Court's logic—that allowing Harmonia to make such a delayed filing would

---

[3]        As the most analogous provision to Rule 62(d) of the Rules of the Court of Federal Claims ("RCFC") is RCFC 62(c), the Court bases much of its analysis on earlier decisions that interpret RCFC 62(c).

contradict the policy considerations underlying the *Blue & Gold* waiver [rule]." *Id.* at 3–4 (citing Opinion and Order at 13–15). Defendant-intervenor additionally contends that plaintiff's argument essentially asks the Court to interpret *Blue & Gold* and its progeny to mean that once a contractor files an agency-level protest, that protestor retains the right to re-raise its pre-award protest grounds with this Court "no matter how many months or even years pass without any further action by the would-be contractor following the denial." Def.-Int.'s Resp. at 3–4. Defendant further posits that plaintiff's arguments fail to contemplate that "the considerations underlying *Blue & Gold* are the same as those underlying the 'diligent pursuit' standing requirement and [that] they apply with equal force to bid protest actions brought by prospective bidders and actual offerors." Def.'s Resp. at 4.

Plaintiff appears to have fundamentally misunderstood the Court's Opinion and Order as well as the clear policy considerations surrounding the implementation of the waiver rule as set forth by the Federal Circuit in *Blue & Gold*. Plaintiff's arguments are predicated on its belief that, because there exists a "diligent pursuit" requirement for standing purposes, such a requirement may *only* apply within the context of standing. In reality, there are dozens of laws with overlapping requirements. For example, to establish a claim under both takings and nuisance law, the plaintiff must prove that the defendant somehow interfered with the plaintiff's use and enjoyment of his land. *Compare United States v. Causby*¸ 328 U.S. 256, 266 (1946) (finding a taking where overhead flights "are so low and so frequent as to be a direct and immediate interference with the enjoyment and use of the land"), *with* Restatement (Second) of Torts § 822 (Am. Law. Inst. 1975) ("An invasion of a person's interest in the private use and enjoyment of land by any type of liability-forming conduct is private nuisance."). The simple fact that such a requirement exists in the context of a takings claim does not forbid its inclusion in the context of a nuisance claim. Here, the Court does not deny that a "diligent pursuit" requirement exists within the context of standing. However, none of the cases to which plaintiff cites stand for the proposition that a "'diligent pursuit' of a claim" cannot exist within the context of waiver under *Blue & Gold*. By failing to timely or diligently pursue its pre-award grounds after receiving an adverse agency-level decision, plaintiff knowingly abandoned its pre-award protest grounds by failing to re-raise those grounds before the U.S. Government Accountability Office ("GAO") or this Court.

In its Opinion and Order, the Court looked to the Federal Circuit's decision in *Blue & Gold* and its progeny to analyze plaintiff's pre-award protest. *See generally* Opinion and Order. In dismissing plaintiff's pre-award protest as untimely, the Court addressed the bases of its decision, which focused on the key policy considerations underlying *Blue & Gold*, in addition to decisions by this Court that dismissed protestors' pre-award protests pursuant to the waiver rule for failure to "timely and diligently pursue" those protest grounds. *See id.* at 13–15; *see also, e.g.*, *Advanced Am. Constr., Inc. v. United States*, 111 Fed. Cl. 205 (2013) (granting defendant's RCFC 12(b)(6) Motion to Dismiss pursuant to *Blue & Gold*'s waiver rule based on plaintiff's failure to timely and diligently pursue its pre-award protest grounds). The Court in *DGR Associates v. United States* held that, when analyzing whether a plaintiff has waived its pre-award protest grounds, "the proper inquiry is to assess whether a party has timely pursued an alleged defect in a solicitation as allowed by law, and whether the party has diligently pressed its position without waiver at each step of the way." 94 Fed. Cl. 189, 204 (2010). While plaintiff is correct that its case and *DGR* present different fact patterns, the plaintiff in *DGR* clearly did

significantly more to diligently pursue—or "diligently press its position"—at every step of the way before filing its protest at this Court. *See generally id.* Conversely, Harmonia knowingly abandoned its pre-award protest grounds until it received an adverse award decision, instead adopting the "wait and see" position that *Blue & Gold* expressly warned against. As a case need not present identical fact patterns to be persuasive on the holding in a later case, the Court interprets *DGR* to set forth a requirement that a plaintiff must diligently pursue—or "diligently press"—its position at every stage of the process in order to preserve the pre-award grounds it later brings at this Court.

One of the key policy considerations the Court considered in determining that plaintiff failed to diligently pursue its pre-award claims was the Federal Circuit's interpretation of the statutory mandate of 28 U.S.C. § 1491(b)(3) (2018), which directs courts to "'give due regard to . . . the need for expeditious resolution of the action' and the rationale underlying the patent ambiguity doctrine [that] favor recognition of a waiver rule." *Blue & Gold*, 492 F.3d at 1315 (quoting 28 U.S.C. § 1491(b)(3)). That the Court relied upon this principle—among others—is evident in the Court's holding that

> [n]othing in the record or in plaintiff's briefing meaningfully explains the five-month delay in Harmonia filing its pre-award protest with this Court. The Court believes that allowing Harmonia to re-raise its pre-award claims months after the Agency's adverse protest decision and subsequent award decision would frustrate the holding in *Blue & Gold* and functionally give Harmonia a second bite at the apple. As such, the Court cannot conclude that Harmonia diligently or timely pursued its position, particularly if the protested terms impacted Harmonia's proposal as severely as Harmonia claims.

Opinion and Order at 15. Thus, the Court remains unpersuaded by plaintiff's arguments that, at their core, seek to undermine the legal and policy considerations of *Blue & Gold* and its progeny.

Moreover, plaintiff posits in a footnote in its Motion that, while *Blue & Gold* is often termed the "waiver rule," it would be more appropriately classified as a forfeiture rule because, while waiver "refers to the knowing abandonment or relinquishment of a right," forfeiture is the failure to assert a right in a timely manner." Pl.'s Mot. at 4–5 n.2. To the extent that a difference exists, plaintiff seemingly has both waived *and* forfeited its right to pursue its pre-award protest. As the Court previously held, plaintiff not only failed to assert its pre-award arguments in a timely manner, but it also knowingly abandoned those arguments by failing to pursue a pre-award protest at the GAO or at this Court after its agency-level protest was denied. Applying plaintiff's logic, were the Court to conclude that plaintiff did not waive its right to bring its pre-award protest grounds, it would also have to conclude that plaintiff was unaware that bringing such a pre-award protest was an option.

Finally, the Court notes that, even had the Court not found plaintiff's pre-award protest untimely, plaintiff is nevertheless unlikely to succeed on the merits given the great degree of deference accorded to agencies in determining the scope of proposal revisions that offerors are permitted to make in response to an amendment to a solicitation. *See Mantech Telcoms. & Info. Sys. Corp. v. United States*, 49 Fed. Cl. 57, 73 (2001) ("Even were section 15.206(d) of the FAR

inapplicable, the government would still be authorized to amend the Solicitation based upon an exercise of its discretion.  Thus, as a general rule, in a negotiated procurement, the contracting agency has broad discretion to amend the solicitation when it determines that such action is necessary to ensure fair and impartial competition and to permit the government to obtain its minimum requirements at the most favorable price.").  As such, and based on the foregoing, the "likelihood of success on the merits" injunctive relief factor weighs heavily against the plaintiff.

 With respect to the second injunctive relief factor, plaintiff argues that it will be irreparably injured if the Court does not grant an injunction, as "Harmonia had a substantial chance of award had the Agency allowed it to revise its proposal."  Pl.'s Mot. at 11.  As such, plaintiff's claim of irreparable harm is based on the denial of "the potential profits and work embodied in the Award."  *Id.*  In response, defendant argues that plaintiff failed to demonstrate irreparable harm and highlights the lack of urgency with which plaintiff brought its appeal. Def.'s Resp. at 10.  In the context of a RCFC 62(d) Motion, this Court has previously held that "loss of a contract is not enough without more to show irreparable harm or warrant a stay pending appeal."  *Algese 2 s.c.a.r.l. v. United States*, 128 Fed. Cl. 7, 12 (2016); *see also Emergency Planning Mgmt. v. United States*, 146 Fed. Cl. 487, 490 (2020) (citing *Akima*, 120 Fed. Cl. at 28).  Accordingly, where, as here, the movant inextricably links the bases upon which it will suffer irreparable harm with its arguments for success on the merits, the plaintiff will need to show more than a loss of "potential profits and work embodied in the Award" to prevail. *Compare, e.g.*, *Algese 2*, 128 Fed. Cl. 7, *with* Pl.'s Mot. at 11; *see also Cleveland Assets, LLC v. United States*, 133 Fed. Cl. 108, 112 (2017) (finding the plaintiff failed to demonstrate irreparable harm where the movant's arguments were "bound up in its chance of success on the merits," which was "not substantial," and where its loss of potential work argument was entirely speculative).  As such, the Court finds this factor weighs against the plaintiff.

 Under the third injunctive relief factor, plaintiff argues that neither defendant nor defendant-intervenor would be substantially harmed by an injunction considering that the Agency has a bridge contract with defendant-intervenor that provides the Agency with the "continuity of services it desires."  Pl.'s Reply at 16; *see also* Pl.'s Mot. at 11.  In its Response, defendant explains that, although the Agency extended its bridge contract until May 2020, the status of its contracted support is nevertheless "uncertain as a result of the short-term bridge contract."  Def.'s Resp. at 12.  Additionally, defendant claims that by having to use a bridge contract, the Agency has not been able to begin work on its long-term development projects.  *See id.*  Defendant-intervenor further argues that its bridge contract "is only a stop-gap matter that allows the most essential work to be performed," and that the "full contract" has additional requirements that will "greatly enhance the security and improvement" of the CSPD program. Def.-Int.'s Resp. at 7.  While the Court appreciates the Agency's need to begin work on its long-term CSPD development projects, the Court nevertheless concludes that this injunctive relief factor tilts slightly in favor of the plaintiff given the Agency's current bridge contract that provides the critical support services necessary to operate the CSPD program.  *Cf. Algese 2*, 128 Fed. Cl. at 12–13 (finding the government would be significantly harmed by an injunction pending appeal where the agency no longer having "a currently enforceable bridge contract significantly increase[d] the harm the Government would suffer both in the potential disruption of [services] and the cost of procuring a new bridge contract.").

Finally, plaintiff argues that it is in the public interest to grant an injunction, as "[t]he 'public has a strong interest in insuring that public officials treat contractors fairly and generally obey procurement laws and regulations,'" and because the Agency continues to receive the necessary services through its bridge contract with defendant-intervenor.  Pl.'s Mot. at 11 (quoting *Rotech Healthcare Inc. v. United States*, 71 Fed. Cl. 393, 431 (2006)); Pl.'s Reply at 16. Additionally, plaintiff claims that an injunction would "preserv[e] the integrity of the procurement process" should the Court "eventually determine[] that Harmonia should have been allowed to amend its proposal.  Pl.'s Mot. at 11.  In response, defendant and defendant-intervenor contend it is in the public's interest to commence performance "as soon as possible," as these contracted services are "indispensable to the continued function of the ACE" and are critical to the Nation's security.  *See* Def.'s Resp. at 12; *see also* Def.-Int.'s Resp. at 7. In support of this assertion, defendant-intervenor points to case law and the Tucker Act, which directs this Court to "'give due regard to the interests of national defense and national security' when deciding bid protests cases."  Def.-Int.'s Resp. at 8 (citing, *e.g.*, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 23–24 (2008); then citing, *e.g.*, *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 656 (2003); and then quoting 28 U.S.C. § 1491(b)(3)).

This Court has held that "the public has an interest in honest, open, and fair competition in the procurement process."  *Cincom Sys. v. United States*, 37 Fed. Cl. 266, 269 (1997).  In cases involving a national security interest, however, the public interest in a transparent procurement system must be balanced with the statutory requirement that the Court "give due regard to the interest of national defense and national security."  28 U.S.C. § 1491(b)(3); *see Gentex*, 58 Fed. Cl. at 655; *see also Algese 2*, 128 Fed. Cl. at 13 ("When national security is at issue, the interest of maintaining a competitive procurement process is outweighed.").  Here, the Agency has demonstrated a strong and substantiated national security interest to support denying injunctive relief.  This is particularly true in light of the current health crisis surrounding COVID-19 that the Country is facing.  Therefore, this injunctive relief factor weighs strongly in favor of defendant and defendant-intervenor.

## III.      Conclusion

Based on the foregoing analysis, plaintiff has failed to demonstrate that an injunction pending appeal is warranted or appropriate.  Accordingly, plaintiff's MOTION for Injunction Pending Appeal is hereby **DENIED**.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith
Senior Judge