# In the United States Court of Federal Claims

No. 19-674
(Filed Under Seal: February 23, 2023)
Reissued: March 10, 2023[1]

| | |
|---|---|
| HARMONIA HOLDINGS GROUP, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| DEV TECHNOLOGY GROUP, INC., | ) |
| | ) |
| Defendant-Intervenor. | ) |
| | ) |

*Walter Brad English*, Maynard, Cooper & Gale, PC, for plaintiff.

*David M. Kerr*, U.S. Department of Justice, Commercial Litigation Division, Washington, DC, for defendant.

*William A. Shook*, Law Offices of William A. Shook, PLLC, Washington, DC, for defendant-intervenor.

**OPINION AND ORDER**

***SMITH*, Senior Judge**

This pre- and post-award bid protest is before the Court on the parties' Cross-Motions for Judgment on the Administrative Record, after remand from the United States Court of Appeals for the Federal Circuit.  Plaintiff, Harmonia Holding Groups, LLC ("Harmonia"), challenges: (1) the United States Customs and Border Protection's ("Agency") decision to limit proposal revisions after Amendments 9 and 10 to the solicitation; and (2) the Agency's proposal

---

[1] An unredacted version of this opinion was issued under seal on February 23, 2023.  The parties were given an opportunity to propose redactions, but no such proposals were made.  *See* Joint Notice of No Proposed Redactions, ECF No. 72.

evaluation and award decision.  *See generally* Plaintiff's Post-Remand Motion for Judgment on the Administrative Record, ECF No. 64 [hereinafter Pl.'s MJAR].  In response, defendant and defendant-intervenor contend Amendments 9 and 10 did not materially impact offerors' technical solutions as to warrant full proposal revisions, and that the Agency's evaluation was rational.  *See generally* Defendant's Response to Plaintiff's Motion for Judgment on the Administrative Record and Cross-Motion for Judgment on the Administrative Record, ECF No. 66 [hereinafter Def.'s CMJAR]; Defendant-Intervenor's Cross-Motion for Judgment on the Administrative Record and Opposition to Plaintiff's Motion for Judgment on the Administrative Record, ECF No. 65 [hereinafter Def.-Int.'s CMJAR].  For the reasons set forth below, the Court denies plaintiff's Motion for Judgment on the Administrative Record and grants defendant's and defendant-intervenor's Cross-Motions for Judgment on the Administrative Record.

I.      **Background**

   A.      **The Solicitation and Evaluation**

      On July 12, 2018, the Agency issued Solicitation No. HSBP1018CSPD ("Solicitation"), requesting quotes for application development and operations and maintenance support services for its Cargo Systems Program Directorate ("CSPD") to develop and support cargo systems applications under the General Services Administration's Federal Supply Schedule. Administrative Record 234–42, 2981 [hereinafter AR].  These applications include a commercial trade processing system called the Automated Commercial Environment ("ACE"), which is an integrated platform "through which the trade community submits data and documentation required by all Federal agencies for imports and exports."  AR 293.

      The Agency indicated its intent to issue a single Time and Materials ("T&M") task order award with a one-year base period, four (4) one-year option periods, and a six-month option to extend services.  AR 270, 1576 (Amendment 9).  Offerors were evaluated in two acquisition phases: Phase I, Oral Presentations and Phase II, Written Response.  AR 235.  Phase I, Oral Presentations was open only to small businesses.  AR 235.  The Agency evaluated Phase I offerors on a best value basis and assigned each offeror an overall adjectival quality rating of high, some, or low confidence.  AR 235, 280, 2985–86.  Offerors with a "high likelihood of being selected [for award were] therefore encouraged to participate in the acquisition of Phase II."  AR 235.

      Offerors that participated in Phase II were subsequently evaluated on a best value basis according to the following five factors:

      (1) Technical Excellence
      (2) Management Approach
      (3) Quality Assurance
      (4) Past Performance
      (5) Price

AR 281–85.  Under the prescribed best value tradeoff, Factor 1 is "more significantly important than Factors 2, 3, and 4; Factors 2 and 3 are of equal importance and significantly more important than Factor 4," and the "non-Price Factors, when combined are significantly more important than the Price Factor (Factor 5)."  AR 286.

Additionally, the Agency assessed proposals in accordance with the following six tasks[2] in the Statement of Work ("SOW") during its Phase II evaluations:

    Task 1 – Contractor Transition In
    Task 2 – Contractor Transition Out
    Task 3 – Cargo Systems Application Development
    Task 4 – Dev/Ops Configuration and Release Management
    Task 5 – IT System Security Analysis
    Task 6 – Operations and Maintenance

AR 1274.  Each of those tasks correspond to a specific evaluation factor within sub-factors as follows:

| Factor | Sub-Factor(s) |
| --- | --- |
| Technical Excellence (Factor 1) | Sub-Factor I: Tasks 3, 4, and 6<br><br>Sub-Factor II: Task 5<br><br>Sub-Factor III: Risk Mitigation Plan |
| Management Approach (Factor 2) | Sub-Factor I: Staffing Plan and Key Personnel Resumes<br><br>Sub-Factor II: Program Management<br><br>Sub-Factor III: Sub-Contracting Management Plan/Teaming Arrangement |
| Quality Assurance (Factor 3) | Sub-Factor I: Task 1<br><br>Sub-Factor II: Task 2 |
| Past Performance (Factor 4) | None |
| Price (Factor 5) | None |

*See* AR 1406–07.  Relevant here, Factor 2, Sub-factor I, required offerors to "provide a staffing plan that outlines how they plan to recruit, hire, retain, and replace personnel," including resumes for key personnel and a Staffing Plan Table.  *See* AR 1413.

---

[2] The original Statement of Work included seven tasks but Amendment 4, dated September 7, 2018, eliminated one task prior to proposal submissions.  *Compare* Administrative Record 297 (Statement of Work) [hereinafter AR], *with* AR 1274 (Amendment 4).

The Solicitation further stipulated how each of the SOW tasks correspond to the T&M contract line items ("CLINs").  AR 1533–34.  Those CLINs, and their associated SOW Tasks, are as follows:

> CLIN 001 - Base Development (Tasks 1, 2, 3, and 4)
> CLIN 002 - On-Demand Services Development (Tasks 3 and 4)
> CLIN 003 - Operation and Management ("O&M") (Tasks 1, 2, 5, and 6)
> CLIN 004 - On-Demand Services O&M (Tasks 5 and 6)

AR 1533–34.  In accordance with their technical proposal, and consistent with their Staffing Plan Table, offerors were required to submit price proposals for each CLIN based on the Sample Price Format spreadsheet provided in the Solicitation.  *See* AR 277, 283, 348, 388.

Originally, the Sample Price Format sheet included over ninety labor categories across all four CLINs and employed a color code to delineate between labor categories needed at the time of award and labor categories that the Agency may need after the start of performance.  AR 334–42, 548, 1533–34.  The Solicitation specified that offerors must use fully-burdened labor rates inclusive of all direct and indirect costs and profit, and, if awarded the contract, be able to "provide the necessary management, labor, facilities, materials and supplies to perform tasks as stated in the task order contract for T&M within the scope of Section IV [of the SOW]."  AR 237.

The Solicitation also indicated the possibility of Surge Requirements, which are defined as "any additional work that can be performed under the scope of this SOW resulting from additional functionality that may be required by ACE to perform."  AR 270, 307.  Under the SOW, if the Agency later determines Surge Requirements are needed, "the Government may exercise the surge CLINS as identified in the task order which will be separately priced and inserted on the Optional Surge CLINs via modification to the Task Order."  AR 307; *see also* AR 270.  In other words, offerors were required at that time to submit proposed prices for Surge Requirements in the Sample Price Format under the designated Surge CLINs—CLINs 002 and 004.  *Compare* AR 1533–34 (Amendment 8), *with* AR 1696 (Amendment 10).

From July 17, 2018 to September 19, 2018, the Agency issued eight amendments to the Solicitation.  *See, e.g.*, AR 1478.  On September 24, 2018, Harmonia submitted its initial proposal.  *See* AR 1699, 1967.

**B.**     **Amendments 9 and 10**

Prior to making an award decision, but after receiving initial proposals from Phase II offerors, the Agency issued two key amendments to the Solicitation, both of which are at issue in this protest.  *See generally* AR 1537–1637 (Amendment 9), 1638–96 (Amendment 10).

**i.**     **Amendment 9**

The first is Amendment 9, which the Agency issued on October 26, 2018.  AR 1537.  Amendment 9 altered the Period of Performance ("PoP"); clarified ordering procedures for

"On-Demand/Surge" CLINs; required revised Factor 2, Sub-Factor I (Staffing Plan) and Factor 5 (Price) proposals from offerors; and revised the Sample Price Format sheet. AR 1576–77, 1584, 1593–94, 1637. Relevant to this case, the changes to the Sample Price Format sheet are discussed below.

Amendment 9 reduced the number of labor categories from over ninety to ten, eliminating labor categories to correspond with the Agency's current labor needs while reserving future labor demands. *Compare* AR 1475 (Amendment 7), *with* AR 1637 (Amendment 9). This change corresponded with the Agency's decision to identify CLINs as either "Required Services" or "On-Demand/Surge Services." AR 1593. Required Services "are services that the Government [has] identified as work needed now to support the SOW." AR 1593. For required services, offerors were required to "propose rates based on their proposed labor category name," but were restricted from changing the number of Full Time Employees ("FTEs") to support those labor categories. AR 1593. On-Demand/Surge Services, on the other hand, are "services that the Government may identify [for] work in the future to support the SOW." AR 1593. For these Surge CLINS, offerors were required to "provide a detailed Staffing Plan when the On-Demand/Surge CLINS are needed (each time), [which] will be issued via modification to the [Task Order]." AR 1589.

To implement these changes, the Agency reissued the Sample Price Format sheet indicating that CLINs 001 and 003 are *required* work while CLINs 002 and 004 are *surge* work. *See* AR 1637 (Amendment 9, Revised Sample Price Format). Specifically, the Agency amended the Sample Price Format sheet, adding the phrase "Required" before "Base Development" and "Base O&M" in the titles of CLINs 001 and 003, respectively. *Compare* AR 1533–34 (Amendment 8, Sample Price Format sheet), *with* AR 1637 (Amendment 9, Revised Sample Price Format sheet). The Agency also changed the phrase "On-Demand Services" to "On-Demand/Surge Services" before "Development" and "O&M" in the titles of CLINs 002 and 004, respectively. *Compare* AR 1533–34, *with* AR 1637.

In the Sample Price Format sheet, the Agency established an estimated ceiling/Not-To-Exceed ("NTE") amount to support On-Demand/Surge CLINs. AR 1593. The Agency further indicated that any unused capacity from those amounts would "carry forward," and future On-Demand/Surge ceiling/NTE amounts could be used to meet the needs of any "current requirement" during that PoP. AR 1593. Lastly, offerors were restricted to inputting FTE amounts to support their technical solutions for the Required Base CLINs consistent with their revised Staffing Plans, but they were directed not to revise the NTE amounts listed in the Sample Price Format for the On-Demand/Surge CLINs. AR 1593–94.

### ii.     Amendment 10

On November 1, 2018, the Agency issued Amendment 10, which added Federal Acquisition Regulation ("FAR") 52.219-14, Limitations on Subcontracting (JAN 2017), to the Solicitation, altered the PoP, and added Task 4 (Dev/Ops Configuration and Release Management) to CLIN 003 (O&M) in the Sample Price Format. AR 1638, 1677, 1692, 1696. Amendment 10 reiterated that offerors must submit price proposals based on the Sample Price

Format sheet in conjunction with their technical proposals. *See* AR 1684. With respect to Factor 2, Sub-Factor I, Amendment 10 explained the following:

> The Offeror shall provide a Staffing Plan, [sic] for CLIN 003 that outlines how they plan to recruit, hire, retain, and replace personnel to ensure a full range of services in support of all requirements and ensure mission success. The Offeror shall ensure the Staffing Plan Table and Price Proposal is consistent. If there is an inconsistency between the Staffing Plan Table and Price Proposal, the proposal may be found non-compliant and be removed from award consideration.
>
> Staffing Plans for CLINS 001, 002, and 004 are not expected from the Offeror at this time. In addition, the Offeror shall provide a detailed Staffing Plan when the On-Demand/Surge CLINS (CLINS 002 and 004) are needed (each time), and this will be issued via modification to the [task order]. Additional information, such as specifications of the additional within scope requirement will be provided to assist the Offeror in the determination of the [FTEs] and the Staffing Plan.

AR 1689–90. Amendment 10 repeated the applicability of those changes to Factor 5, and further specified that "[NTE] values will be utilized for CLINS 001, 002 and 004." AR 1692. In connection with the changes under Amendments 9 and 10, the Agency limited proposal revisions to Factor 2, Sub-Factor I (Staffing Plan and Key Personnel Resumes) and Factor 5 (Price). AR 1537, 1638, 1684–85. Harmonia timely submitted its revised proposal. *See* AR 2561.

### C.    Pre-Award Agency Protest

On November 12, 2018, Harmonia filed a pre-award protest with the Agency before the deadline for submission of bids. *See generally* AR 2490–94. In that agency-level protest, Harmonia argued that the amendments made material changes to the solicitation that "potentially affect all evaluation factors" but the Agency only allowed proposal revisions to Factor 2, Sub-Factor I and Factor 5. AR 2490. Harmonia requested that offerors be allowed to modify their entire proposal and not be limited to modifying their proposal with respect to Factor 2, Sub-Factor I and Factor 5. *See* AR 2492–94.

On December 6, 2018, the Agency issued a decision denying Harmonia's pre-award protest on all grounds. *See generally* AR 2898–901. The Agency stated that full proposal revisions were not necessary because Amendments 9 and 10 were issued to provide all Phase II offerors "additional flexibility towards pricing." AR 2899. The Agency further stated that Amendment 10 "did not change the overall technical solution to be performed under the contract, [and, as] a result, the Government does not believe this constitutes a material change to the solicitation." AR 2899.

### D.    Evaluation of Proposals and Task Order Award

In its March 25, 2019 Comparative Evaluation and Best Value Determination Report, the Agency provided a comprehensive explanation for how it assigned overall adjectival and risk

ratings to offerors' proposals. *See generally* AR 2980–3059. The Agency assigned Harmonia an overall Marginal/High Risk rating for Factor 2 and an overall Marginal/Medium Risk rating for Factor 3. As for the relevant sub-factors, Harmonia received a Marginal/High Risk rating for Factor 2, Sub-Factors I and II, and a Marginal/High Risk rating for Factor 3, Sub-Factor I. AR 3049.

With respect to Factor 2, Sub-Factor I, the Agency found that Harmonia's proposal posed a high risk because it failed to provide a complete staffing plan. AR 3027; *see also* AR 2605. Specifically, Harmonia did not include a staffing plan for "Cargo Release, [Foreign Trade Zone ('FTZ')], [International Trade Data System ('ITDS')], or [Automated Export System ('AES')], which are major areas of functionality in O&M" listed in Attachment E to the SOW. AR 3027; *see also* AR 1307–16 (Statement of Work, Attachment E). Due to these omissions, the Agency concluded Harmonia's proposal posed a high risk, "as the proposed staffing plan (related to CLIN 0003) will be insufficient, and cost will increase due to the delay in transitioning the applications." AR 3027.

With respect to Factor 2, Sub-Factor II, the Agency also found that Harmonia's proposal posed a high risk due to the "omission of certain critical applications." AR 3027; *see also* AR 2609. Similar to Factor 2, Sub-Factor I, Harmonia's proposal did not address Cargo Release, FTZ, ITDS, or AES. *See* AR 3028. Due to this omission, the Agency concluded that "Harmonia does not fully understand the SOW requirements." AR 3028. Similarly, under Factor 3, Sub-Factor I, the Agency found that Harmonia's proposal posed a high risk because it did not address "critical" functionalities such as Cargo Release, ITDS and AES. AR 3028; *see also* AR 2609. As these tasks were required, the Agency concluded that their omission would lead to "unsuccessful performance." AR 3028.

Based on Harmonia's ratings under Factor 2 and Factor 3, the Agency eliminated Harmonia from the competition. AR 3052 (stating that to keep Harmonia in the competition "would post a significant risk to cost, schedule, and performance for the overall CSPD program and CBP mission."). The Agency provided the following explanation for its decision:

> Dev Tech is more highly ranked than Harmonia, **which is considered the lowest ranked technical solution**. A lower technical solution at a higher price of an additional $10,134,901.02 or 3.11% higher is not in the best interest of the Government. In addition, **Harmonia is not among the Quoters considered for award due to their Marginal and High Risk rating** received for their proposed Factor 2 Management Approach solution and Marginal and Medium Risk rating received for their proposed Factor 3 Quality Assurance solution.

AR 3052 (emphases added). On April 23, 2019, the Agency notified Harmonia of its decision to award the task order to defendant-intervenor, Dev Technology Group, Inc. ("Dev Tech"). AR 3060–61.

### E.     Procedural History

On May 7, 2019, Harmonia filed its bid protest with this Court, challenging the Agency's December 6, 2018 decision denying Harmonia's pre-award protest and the Agency's evaluation of Harmonia's final proposal. *See generally* Complaint, ECF No. 1. In June through September 2019, the parties briefed their cross-motions for judgment on the administrative record and defendant's motion to dismiss. *See* Plaintiff's Motion for Judgment on the Administrative Record, ECF No. 23; Defendant-intervenor's Cross-Motion for Judgment on the Administrative Record, ECF No. 24; Defendant's Motion to Dismiss and Cross-Motion for Judgment on the Administrative Record, ECF No. 25.

On January 16, 2020, this Court issued a decision on the parties' motions. *See* Opinion and Order, ECF No. 44. The Court first denied defendant's motion to dismiss and found that Harmonia had standing because it "would have had a substantial chance of receiving the task order award" but for alleged agency error. *See id.* at 12. Next, the Court addressed Harmonia's argument raised in its pre-award protest—that the Agency improperly denied offerors the opportunity to revise their proposals in response to Amendments 9 and 10. *See id.* at 12–15. The Court found Harmonia waived its right to re-assert its pre-award arguments in view of *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007)[3], as it did not timely file a pre-award protest with the Government Accountability Office ("GAO") or this Court after the Agency's adverse protest decision. *Id.* at 15. Finally, the Court addressed Harmonia's post-award challenges to the Agency's evaluation and its resulting decision to award the contract to Dev Tech. *See id.* at 15–19. The Court found no evidence in the record demonstrating that the Agency irrationally or arbitrarily assigned risk ratings that disqualified Harmonia from consideration for award. *See id.* at 19. Accordingly, the Court denied Harmonia's motion for judgment on the administrative record and granted defendant's and Dev Tech's cross-motions. *Id.*

On February 24, 2020, Harmonia appealed its case to the Federal Circuit. *See* Notice of Appeal, ECF No. 47. On December 7, 2021, the Federal Circuit issued its opinion. *See Harmonia Holdings Grp., LLC v. United States*, 20 F.4th 760 (Fed. Cir. 2021). The Federal Circuit found *Blue & Gold* inapplicable to this case because Harmonia timely filed its challenge at the Agency-level. *See Harmonia Holdings*, 20 F.4th at 767; *see also Blue & Gold*, 492 F.3d 1308. Accordingly, the Federal Circuit concluded Harmonia had not waived its right to assert its pre-award protest arguments, and reversed this Court's decision regarding Harmonia's pre-award protest and vacated this Court's decision regarding the evaluation of Harmonia's proposal. *Id.* at 767 ("Recognizing that the Court of Federal Claims, on remand, could determine that it is appropriate to reopen bidding and allow offerors to submit wholly new proposals, which would require a new technical evaluation by CBP . . ."). The case was remanded back to this Court to determine "what relief, if any, Harmonia is entitled to based on its preaward protest." *Id.* at 760.

On May 20, 2022, Harmonia filed its post-remand Motion for Judgment on the Administrative Record. *See* Pl.'s MJAR. On June 17, 2022, defendant and defendant-intervenor

---

[3] *Blue & Gold* held, *inter alia*, that "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims." *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007).

filed their post-remand Cross-Motions for Judgment on the Administrative Record as well as their Responses to plaintiff's post-remand Motion for Judgment on the Administrative Record. *See* Def.'s CMJAR; Def.-Int.'s CMJAR.  On June 27, 2022, plaintiff filed its Reply in Support of its post-remand Motion for Judgment on the Administrative Record and Response to the Cross-Motions for Judgment on the Administrative Record.  *See* Plaintiff's Reply in Support of its Motion for Judgment on the Administrative Record, ECF No. 67 [hereinafter Pl.'s Reply]. On July 11, 2022, defendant and defendant-intervenor filed their Replies in Support of their post-remand Cross-Motions for Judgment on the Administrative Record.  *See* Defendant's Reply in Support of its Cross-Motion for Judgment on the Administrative Record, ECF No. 69; Defendant-Intervenor's Reply in Support of its Cross-Motion for Judgment on the Administrative Record, ECF No. 68.  The Court held oral argument on September 13, 2022.  The parties' Motions are fully briefed and ripe for review.

## II.    Standard of Review

This Court's jurisdictional grant is found primarily in the Tucker Act, which affords this Court with jurisdiction over bid protest actions.  28 U.S.C. § 1491(b).  This Court evaluates bid protests under the Administrative Procedure Act's ("APA") standard of review for agency actions.  *See* 28 U.S.C. § 1491(b)(4); *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005) (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).  Under APA standards, agency procurement actions may be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A).

Under Rule 52.1 of the Rules of the Court of Federal Claims, a party may file a motion for judgment on the administrative record for the court to assess whether an administrative body, given all disputed and undisputed facts in the record, acted in compliance with the legal standards governing the decision under review.  *See Supreme Foodservice GmbH v. United States*, 109 Fed. Cl. 369, 382 (2013) (citing *Fort Carson Support Servs. v. United States*, 71 Fed. Cl. 571, 585 (2006)).  On a motion for judgment on the administrative record, the parties are limited to the Administrative Record, and the court makes findings of fact as if it were conducting a trial on a paper record.  R. Ct. Fed. Cl. 52.1; *Bannum*, 404 F.3d at 1354.  Looking to the Administrative Record, the court must determine whether a party has met its burden of proof based on the evidence in the record.  *Bannum*, 404 F.3d at 1355.

An agency's decision may only be set aside "if (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure."  *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (quoting *Impresa*, 238 F.3d at 1332).  An agency decision lacks rational basis only if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Keeton Corrs. Inc. v. United States,* 59 Fed. Cl. 753, 755 (2004) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983) (internal quotations omitted)).  When a protestor claims

that an agency's decision violates a statute, regulation, or procedure, the protestor must show that the alleged violation was "clear and prejudicial." *Impresa*, 238 F.3d at 1333.

"If the court finds a reasonable basis for [an] agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989). The court cannot substitute its judgment for that of an agency, even if reasonable minds could reach differing conclusions. *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974).

## III.    Discussion

Harmonia challenges the Agency's limitation of proposal revisions to offerors' staffing plans and price proposals, arguing that the Agency acted arbitrarily, irrationally, and contrary to law when it did not allow offerors to amend their technical proposals in response to Amendments 9 and 10. *See* Pl.'s MJAR at 9–15. In response, defendant and defendant-intervenor assert that the Agency was not required to allow plaintiff to fully revise its proposal, and Amendments 9 and 10 did not change the overall technical solution. *See* Def.'s CMJAR at 6–12; *see also* Def.-Int.'s CMJAR at 13–19. For the reasons set forth below, the Court denies plaintiff's Motion for Judgment on the Administrative Record and grants defendant's and defendant-intervenor's Cross-Motions for Judgment on the Administrative Record.

### A.    Limiting Proposal Revisions

Harmonia points to FAR 15.206(a) to argue that the Agency was required to provide an opportunity for offerors to respond to Amendments 9 and 10 with updated proposals because "the amendments were material." *See* Pl.'s MJAR at 9–11. Defendant and defendant-intervenor argue that Harmonia failed to show that the amendment changes had a "material impact" on its technical proposal as to warrant revisions. *See* Def.'s CMJAR at 13; Def.-Int.'s CMJAR at 14. The Court agrees with defendant and defendant-intervenor.

FAR 15.206(a) provides that "[w]hen, either before or after receipt of proposals, the Government changes its requirements or terms and conditions, the contracting officer shall amend the solicitation." Federal Acquisition Regulation 15.206(a) [hereinafter FAR]. This Court has previously stated that, while an amendment to the Solicitation may necessitate an opportunity for offerors to revise their proposals, "there simply is no hard-and-fast rule that offerors must be permitted to submit entirely new, updated proposals . . . in response to any and all solicitation amendments." *See WaveLink, Inc. v. United States*, 154 Fed. Cl. 245, 286 (2021). Rather, such a right arises only in the case of "major modifications—changes that could result in a substantially different proposal." *Portfolio Disposition Mgmt. Grp. LLC v. United States*, 64 Fed. Cl. 1, 12 (2005) (citing material departures from the scope of the original procurement, such as the "type of work, performance period, and costs," as a factor in determining a major modification).

The Court is not convinced, and the record does not demonstrate, that the amendments at issue materially impacted offerors' technical proposals. Amendment 10 moved Task 4 from CLIN 001 (Base Development) and CLIN 002 (On-Demand Development) to CLIN 003 (Base O&M) in the Sample Price Format sheet. AR 1696. Similarly, Amendment 9 clarified current work and surge work, while also reducing the number of labor categories in the Sample Price Format sheet from over ninety to ten. *Compare* AR 1475 (Amendment 7), *with* AR 1637 (Amendment 9). These changes required updates to price and labor in the Sample Price Format sheet with associated updates to offerors' price proposals and staffing plans. *See* AR 2495–535.

The Sample Price Format sheet, included as Attachment C to the SOW, is a spreadsheet comprised of rows for various labor categories and columns for rates by contract period. *See* AR 287, 1477 (demonstrating that rows of labor categories are grouped by CLIN within the Sample Price Format sheet). The staffing plan "outlines how [offerors] plan to recruit, hire, retain, and replace personnel" for the duration of the contract, and includes resumes for key personnel. *See* AR 1252, 1259, 2495–534. Accordingly, after Amendments 9 and 10, the Agency instructed offerors to submit an updated price proposal and staffing plan in conjunction with the updated Sample Price Format sheet by filling in labor rates. *See* AR 277, 283 (requiring offerors to "ensure there is consistency . . . between the Staffing Plan Table and the Price Proposal."), 348, 388. In other words, the Agency limited proposal revisions to these pertinent documents because Amendments 9 and 10 made changes which impacted offerors' staffing plans and corresponding price proposals. Therefore, the Court finds that Amendments 9 and 10 did not constitute major modifications, such that full proposal revisions would be warranted.

In any event, procurements conducted under FAR Subpart 8.4, such as the case here, are exempt from FAR Parts 13, 14, and 15, with some minor exceptions that are not applicable here. *See* FAR Subpart 8.404(a) (exempting Blanket Purchase Agreements and Federal Supply Schedules contracts from FAR Part 13, 14, and 15, except FAR Subpart 13.303-2(c)(3) relating to Blanket Purchase Agreements); *see also Sys. Plus, Inc. v. United States*, 68 Fed. Cl. 206, 210 (2005). Plaintiff bases much of its argument around FAR Part 15, but this Court notes that this Solicitation is conducted under FAR 8.4. *See* AR 271 ("Ordering procedures shall be in accordance with FAR 8.405-3(c)(2)."); *see also* Pl.'s MJAR at 4 (acknowledging that "[t]he RFQ expressed the Agency's intent to make award using the best value tradeoff procedures of FAR 8.405-2"). As such, the Agency is not required to apply the procedures under FAR Part 15 that provide offerors an opportunity to revise their technical proposals after amendment. *See* FAR Subpart 8. Regardless, the Court finds no clear or prejudicial violation of applicable law as to the Agency's decision to limit proposal revisions.

Harmonia further argues that Amendments 10 and 9 made changes to the Solicitation that had a material impact on offerors' technical proposals. *See* Pl.'s MJAR at 12–14. These specific arguments are addressed below.

i.      **Amendment 10 – Task 4**

Harmonia alleges that Amendment 10 made a "fundamental change" to the Solicitation that increased the significance of Task 4 and that "[t]he Agency should have permitted Harmonia to revise its entire proposal." *See* Pl.'s MJAR at 12–14. Defendant and defendant-intervenor argue that Amendment 10 did not change the overall technical requirements of the Solicitation, including the requirements for Task 4 as described in the SOW, so the Agency's limitations on proposal revisions were appropriate. *See* Def.'s CMJAR at 6–7; Def.-Int.'s CMJAR at 14. The Court is inclined to agree with defendant and defendant-intervenor.

As stated above, Amendment 10 moved Task 4 from CLIN 001 (Base Development) and CLIN 002 (On-Demand Development) to CLIN 003 (Base O&M) in the Sample Price Format sheet. AR 1696. While Amendment 10 moved Task 4 to a different CLIN, it did not change the requirements or the evaluation of Task 4 to such an extent that the Agency's limitations of proposal revisions was arbitrary or capricious. Task 4 itself remained a base-contract requirement that offerors were required to address prior to, and after, Amendment 10. AR 1696. Prior to Amendment 10, SOW Task 4, related to Development/Operation Configuration and Release Management, included the following requirement:

- Manage and maintain the release process, to include making any necessary improvements based on policy or technology.
- Support the day to day software release process (Dev/Ops) for CSPD from configuration management to Production release that includes:
  - Software and Database configuration management
  - Version control
  - Release management
  - Management of software builds and deployments
  - Promotion to all environments
- Implement and maintain scalable build, test, staging and deployment tools, and automation that allows integration with various Continuous Integration (CI) tools, Artifact Repositories and sub systems.
- Coordinate with functional (development/testing, deployment, systems/infrastructure) and development teams to ensure continuous operation for configuration management and release management.
- Maintain the configuration management data base (CMDB).

AR 1277–78 (Amendment 4). After Amendment 10, SOW Task 4 included the same exact requirements. *See* AR 1608; AR 1688–89.

Further, the evaluation criteria for SOW Task 4, under Factor 1, Sub-Factor I, remained unchanged between Amendment 8 and Amendment 10. Prior to Amendment 10, Factor 1, Sub-Factor I included the following criteria:

- Describe the technical approach, techniques and methodology for achieving technical excellence for the objectives listed of the SOW . . .

-12-

- Describe the technical approach, techniques and methodology for ensuring that the Offeror can meet the system availability requirements as described in the SOW.
- . . .
- Describe any innovative technical approaches, techniques and methodologies that may be used in performing the requirements outlined in the SOW that would benefit the CBP mission by way of optimizing and improving performance as well as reducing performance risk.

AR 1525–26 (Amendment 8).  After Amendment 10, Factor 1, Sub-Factor I included the same evaluation criteria.  Therefore, Task 4's requirements and evaluation criteria remained the same despite the amendments at issue.  *Compare* AR 1525–26 (Amendment 8), *with* AR 1587–88 (Amendment 9), *and* AR 1688–89 (Amendment 10).  Accordingly, offerors' technical solutions were unaffected by Amendment 10 as both the technical requirements and evaluation criteria for Task 4 were unchanged.

### ii.    Amendment 9 – Required Work versus Surge Work

Harmonia alleges that Amendment 9 "drastically altered the way the Agency framed its staffing needs, after offerors had developed and proposed their labor mixes," such that the Agency should have allowed offerors to fully revise their proposals.  *See* Pl.'s MJAR at 12.  Defendant and defendant-intervenor argue that Amendment 9 did not change the technical solution as to require full proposal revisions.  *See* Def.'s CMJAR at 10; Def.-Int.'s CMJAR at 17.  As with Amendment 10, the Court is not convinced that the changes implemented by Amendment 9 necessitate proposal revisions beyond that allowed by the Agency.

Amendment 9 clarified the distinction between required work and surge work, and reduced the number of labor categories from over ninety to ten, which had a limited impact on offerors' proposals.  *Compare* AR 1475 (Amendment 7), *with* AR 1637 (Amendment 9).  Amendment 9 implemented these revisions by including an updated Sample Price Format sheet to indicate that CLINs 001 (Base Development) and 003 (Base O&M) are *required* work while CLINs 002 (Base O&M) and 004 (On-Demand O&M) are *surge* work.  *See* AR 1637 (Amendment 9, Revised Sample Price Format).  In effect, Amendment 9 altered the template on which offerors' price proposals were based on and clarified the Agency's current needs.

After Amendment 9, offerors were no longer required to propose prices for potentially needed labor categories—the Agency would allow offerors to submit a detailed staffing plan when surge CLINS were *actually needed*.  *Compare* AR 1533, *with* AR 1637; *see also* AR 1589 (offerors were required to "provide a detailed Staffing Plan when the On-Demand/Surge CLINS are needed (each time), [which] will be issued via modification to the [Task Order].").  As a result, offerors' price proposals, and by extension, their staffing plans, were minimally affected because offerors were submitting prices for labor based on the Agency's *current needs*, noting that their staffing plan would have to be updated for on-demand/surge CLINS in the future.  *See*

-13-

AR 277, 283, 348, 388.  Thus, the Agency did not change its technical solution when it clarified services that the Agency needed now to support the SOW.

Further, the Agency tailored Amendment 9 and 10 to "allow additional flexibility towards pricing" without changing the solicitation's technical requirements.  AR 2899.  To the extent that plaintiff had a unique labor-mix, the Sample Price Format sheet could have accommodated this change.  Offerors were allowed to add any additional labor categories to the Sample Price Format Sheet for its price proposal and make any corresponding changes to their staffing plan.  *See* AR 1692.  Thus, offerors could address the changes made by Amendment 9, while keeping the ability to propose unique labor mixes through revised price proposals and staffing plans.

Therefore, the Court is not persuaded that the Agency's actions were arbitrary, capricious, an abuse of discretion, or contrary to law.

### B.      Post-award Protest

The Federal Circuit vacated this Court's post-award decision with respect to the Agency's technical evaluation of Harmonia's proposal because of the potential of new technical evaluations if Harmonia succeeds in its pre-award challenge on remand.  *See Harmonia Holdings Grp., LLC v. United States*, 20 F.4th 760 (Fed. Cir. 2021).  However, because the Court finds that Harmonia has not succeeded in its pre-award challenge to submit a new proposal, the Court sees no reason to modify its previous decision regarding the Agency's evaluation of Harmonia's original proposal.  *Id*. at 768 ("To the extent that the Court of Federal Claims determines on remand that Harmonia is not entitled to submit a wholly revised proposal, the Court of Federal Claims may decide to reinstate its decision that [the Agency]'s technical evaluation was rational.").  Accordingly, the Court concludes, and therefore reinstates, its original position that the Agency's technical evaluation of Harmonia's proposal was rational.  *See* Opinion and Order, ECF 46.

### C.      Prejudice and Injunctive Relief

Plaintiff alleges that it was prejudiced by the Agency's decision when it failed to allow full proposal revisions; therefore, plaintiff argues that it should be granted injunctive relief.  Pl.'s MJAR at 16–18.  Defendant and defendant-intervenor argue that plaintiff was not prejudiced because it received an overall "High Risk" rating for Factor 2 (Management Approach) despite being allowed to revise its proposal as to Factor 2, Sub-Factor 1 (Staffing Plan) after Amendment 9.  *See* Def.'s CMJAR at 15; Def.-Int.'s CMJAR at 19.  Defendant and defendant-intervenor further argue that plaintiff is not entitled to injunctive relief as it is not successful on the merits of the case.  *See* Def.'s CMJAR at 15; Def.-Int.'s CMJAR at 21.

The Court declines to grant plaintiff injunctive relief.  As the Court is not persuaded by plaintiff's contentions that the Agency acted irrationally or unreasonably in limiting proposal

-14-

revisions, the Court does not believe that plaintiff was prejudiced by such alleged procurement flaws.  Further, when analyzing whether a permanent injunction is proper, this Court analyzes "whether, as it must, the plaintiff has succeeded on the merits of the case."  *PGBA, LLC v. United States*, 389 F.3d 1219, 1229 (Fed. Cir. 2004).  As Harmonia has not succeeded on the merits of its case, this Court will not grant an injunction.

**IV.     Conclusion**

   For the reasons set forth above, plaintiff's Post-Remand MOTION for Judgment on the Administrative Record is hereby **DENIED**.  Defendant's and defendant-intervenor's Post-Remand CROSS-MOTIONS for Judgment on the Administrative Record are hereby **GRANTED**.  The Clerk is directed to enter judgment in favor of defendant and defendant-intervenor, consistent with this opinion.

   **IT IS SO ORDERED.**

        s/ *Loren A. Smith*

        Loren A. Smith,
        Senior Judge